UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEAMSTERS LOCAL 456 PENSION,
HEALTH & WELFARE, ANNUITY,
EDUCATION & TRAINING, INDUSTRY
ADVANCEMENT AND LEGAL
SERVICES FUNDS by Louis A. Picani,
Joseph Sansone, Dominick Cassanelli, Jr.,
Saul Singer, Ross Pepe, and Jeffrey Isaacs as
Trustees and Fiduciaries of the Funds; and
WESTCHESTER TEAMSTERS LOCAL
UNION NO. 456,

                           Plaintiffs,

        v.

CRL TRANSPORTATION, INC.,

                         Defendant.

No. 18-CV-2056 (KMK)

OPINION & ORDER

Appearances:

Daniel Ernest Kornfeld, Esq.
Blitman & King LLP
Syracuse, NY
*Counsel for Plaintiffs*

Karin Arrospide, Esq.
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Teamsters Local 456 Pension, Health & Welfare, Annuity, Education & Training,

Industry Advancement and Legal Services Funds by Louis A. Picani, Joseph Sansone, Dominick

Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs as Trustees and Fiduciaries of the

Funds (the "Funds"), and Westchester Teamsters Local Union No. 456 ("Local 456" or the

"Union") (collectively, "Plaintiffs"), bring this Action against CRL Transportation, Inc.

("Defendant"), alleging that Defendant failed to remit employee benefit contributions to the

Funds as required under the Parties' collective bargaining agreements, in violation of Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145. (*See generally* Compl. (Dkt. No. 4).) Before the Court is Plaintiffs' Motion for Summary Judgment and for attorneys' fees (the "Motion"). (*See* Not. of Mot. (Dkt. No. 34).)

For the following reasons, the Court grants Plaintiffs' Motion for Summary Judgment, but denies without prejudice Plaintiffs' request for attorneys' fees.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiffs' statement pursuant to Local Civil Rule 56.1, (Pls.' Rule 56.1 Statement ("Pls.' 56.1") (Dkt. No. 34-1)), as well as the admissible evidence submitted by the Parties. The facts are recounted "in the light most favorable to" Defendant, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018)

(citation and quotation marks omitted).[1]  The facts as described below are in dispute only to the extent indicated. [2]

Louis A. Picani, Joseph Sansone, Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs are Trustees and fiduciaries of the Funds as defined in Section 3(14)(A) of the ERISA, 29 U.S.C. §1002(14)(A).  (Pls.' 56.1 ¶ 1.)  The Funds are "employee benefit plans," "multiemployer plans," and/or "industry advancement programs" within the meaning of ERISA Sections 3(3) and (37)(A), 29 U.S.C. §§1002(3), (37) and Sections 302(c)(5) and (9) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§186(c)(5) and (9).  (*Id.* ¶ 2.)  The

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The non-moving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Loc. Civ. R. 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citations and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).

Here, Defendant submitted a response to Plaintiffs' 56.1 Statement disputing several facts, but cited no record evidence and did not identify any factual basis to support its denials, save for one disputed point about the correct address of Defendant's President, Chris Lumia.  (*See* Def.'s Resp. to Pls.' 56.1 Statement ("Def.'s 56.1 Resp.") ¶ 7 (Dkt. No. 35-3).)  Because Defendant fails to cite any evidence in support of its denials, Plaintiffs' 56.1 Statement is deemed admitted for purposes of the Motion.  *See Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) ("Local Rule 56.1 states that the moving party's 56.1 statement 'will be deemed to be admitted unless controverted,' and requires that such denials be supported by a specific citation to admissible evidence.  Accordingly, any of the [p]laintiff's Rule 56.1 Statements that [d]efendants do not specifically deny—with citations to supporting evidence— are deemed admitted for purposes of [the] [p]laintiff's summary judgment motion." (citing Fed. R. Civ. P. 56) (citations and quotation marks omitted)); *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 602 (S.D.N.Y. 2013) (same).

[2] Where possible, the Court has relied on the undisputed facts in the Parties' 56.1 statements.  However, direct citations to the record have also been used where relevant facts were not included in any of the Parties' Rule 56.1 submissions, or where the Parties dispute each other's characterization of the record.

Funds are established through collective bargaining agreements, and they are administered within the Southern District of New York at 160 South Central Avenue, Elmsford, New York 10523 in Westchester County, New York.  (*Id.* ¶ 3.)

Defendant is party to "one or more" collective bargaining agreements (the "Agreements") with the Union.  (*Id.* ¶ 13.)  The Agreements provide that in the event Defendant failed to timely remit contributions and deductions to the Funds, Defendant would become liable not only for the amount of contributions and deductions due, but also for: "(1) interest on the unpaid and untimely paid Funds contributions, at the rate of ten percent (10%) per annum; (2) liquidated damages equal to ten percent (10%) of those delinquent contributions; and (3) the attorneys' fees, audit fees, and the costs of collection."  (*Id.* ¶ 15.)

After the adoption of the Agreements on May 22, 2017, Defendant remitted a portion of the contributions owed to the Funds and deductions to the Union related to work in covered employment.  (*Id.* ¶ 16.)  Chris Lumia ("Lumia"), President of Defendant, confirmed that he regularly made contributions to the Funds.  (*See* Aff. of Daniel Kornfeld, Esq. ("Kornfeld Aff.") (Dkt. No. 34-3) Ex. B ("Pls.' Lumia Dep."), at 52–56.)  However, Defendant did not remit all contributions and deductions owed for the period of May 22, 2017 through September 30, 2018. (Pls.' 56.1 ¶ 17.)

The Funds' accountants have determined that Defendant owed the Funds and the Union a total of $145,592.86 in contributions and deductions for that time period, as well as $14,293.28 in liquidated damages, $5,148.90 in interest as of December 14, 2018, and $2,812.50 in audit fees.  (*Id.* ¶¶ 20–23.)  Additionally, "[p]ursuant to the Collections Policy," Defendant owes Plaintiffs reasonable attorneys' fees, which Plaintiffs calculate to be $42,935.21.  (*Id.* ¶ 24.)

B.  Procedural Background

Plaintiffs filed the Complaint on March 8, 2017.  (Compl.)  On April 23, 2018, after

Defendant failed to respond, the Clerk of the Court entered a Certificate of Default against

Defendant.  (Dkt. No. 10.)  However, Defendant appeared on May 1, 2018, (Dkt. No. 11), and

the Parties stipulated to set aside the default on May 15, 2018, (Dkt. No. 13).  Defendant filed an

answer on May 18, 2018.  (Dkt. No. 14.)

On December 13, 2018, Plaintiffs filed the instant Motion for Summary Judgment.  (Not.

of Mot.; Pls.' 56.1; Pls.' Mem. of Law in Supp. of Mot. for Summ. J. ("Pls.' Mem.") (Dkt. No.

34-14); Kornfeld Aff.)  Defendant filed a response on January 4, 2019.  (Def.'s Mem. of Law in

Opp'n to Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 35); Def.'s 56.1 Resp.)  Plaintiffs filed a

reply on January 17, 2019.  (Pls.' Reply Mem. of Law in Further Supp. of Mot. for Summ. J.

("Pls.' Reply") (Dkt. No. 36); Pls.' Reply Aff. in Further Supp. of Mot. for Summ. J. ("Pls.'

Reply Aff.") (Dkt. No. 37).)

II.  Discussion

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).  "It is the movant's burden to show that

no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *Brod*, 653 F.3d at 164 (quotation marks omitted).  Thus, a court's goal should

be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted). However, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B. Analysis

Plaintiffs assert that they have established the Funds' entitlement to the contributions at issue as a matter of law. (Pls.' Mem. 3–7.) Defendant argues that Lumia's testimony creates an issue of material fact as to whether the Agreements are void, which is a defense to an action under ERISA for delinquent benefit contributions. (*See* Def.'s Mem. 2–3.)

1. Applicable Law

Section 502 of ERISA gives trustees "the authority to sue to enforce an employer's obligations to a plan." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 578–79 (1985) (citing 29 U.S.C. § 1132); *see also Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 113 (2d Cir. 2002) (noting that Section 502 "allows 'a participant, beneficiary, or fiduciary' of an ERISA-regulated plan to bring a civil action for injunctive and other equitable relief"). Section 502 provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of—

> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. §1132(g)(2). Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "The courts of appeals that have construed section 515 have unanimously regarded it as a limitation on the defenses available to an employer when sued by an employee benefit plan." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990).

The Second Circuit has observed that there have been only two recognized defenses to a claim under Section 515: "(1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Id.* (citing *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86–88 (1982), and *Operating Eng'rs Pension Trust v. Gillam*, 737 F.2d 1501, 1503–05 (9th Cir. 1984))); *see also Trustees of Int'l Bhd. of Teamsters Local 531 Sick & Welfare Fund v. Marangi Bros.*, 289 F. Supp. 2d 455, 464 (S.D.N.Y. 2003) ("This Circuit has interpreted § 515 as limiting the defenses available to employers when sued by an employee benefit plan to those cases in which the agreement is void for fraud or in which payments would be illegal." (citations omitted)). To succeed with respect to the defense that a collective bargaining agreement is void, a defendant must demonstrate fraud in the execution of the collective bargaining agreement; "the defense of fraud in the inducement is not available" in an action under Section 515. *Trustees of ALA-Lithographic Pension Plan v. Crestwood Printing*

*Corp.*, 141 F. Supp. 2d 406, 410 & n.1 (S.D.N.Y. 2001) ("Fraud in the execution arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms. Fraud in the inducement occurs when a party is induced to assent to something he otherwise would not have." (citations and quotation marks omitted)); *see also Benson*, 907 F.2d at 314 (noting that Section 515 bars an employer from raising the defense "that [it] was fraudulently induced to enter into the [collective bargaining] agreement" (citations omitted)). "Examples of fraud in the execution include a party's substitution of one type of document for another, and the substitution of a new document of the same kind as the one previously read and agreed to by the other party, but containing materially different terms." *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 336 (E.D.N.Y. 2009) (citation omitted).

## 2. Application

Defendant argues that Lumia's testimony "demonstrates the existence of genuine issues of material fact as to whether the alleged agreements at issue are void ab initio," invoking the second defense to a Section 515 claim. (Def.'s Mem. 2.) In its memorandum, Defendant cites two sections of Lumia's deposition that it claims support the defense. (*Id.* (citing Def.'s Mem. Ex. 1 ("Def.'s Lumia Dep.") 37–40, 86–91 (Dkt. No. 35-1)).) Quoting a single passage from Lumia's testimony, Defendant argues that it "provides evidence from which a fact-finder could draw inferences in Defendant's favor with respect to the . . . defense." (*Id.*) Defendant's memorandum explains, "[a]lready at a disadvantage because he is a small employer with no bargaining power who cannot negotiate terms on a master collective bargaining agreement, Mr. Lumia's testimony raises a red flag about the conduct of a union representative —who is also a Trustee and fiduciary." (*Id.*) In the quoted passage, Lumia states, "[I]t's just two guys talking at

that big round table in the union hall, and there's no lawyers, there's no contracts on the table, there's nothing in writing, and Dominick is telling me . . . .  We have a salt contract while you're doing salt.  You pay half of what you're paying on the construction agreement."  (Def.'s Lumia Dep. 89–90.)  Defendant argues that this demonstrates that Lumia "was, essentially, prevented from reading the contract(s) because these were not provided to him in advance with an opportunity to review—much less confer with counsel as to the meaning and consequences," and that this constitutes "excusable ignorance of contents of writing signed."  (Def.'s Mem. 3.)  It is not clear from Defendant's memorandum how the quoted language remotely suggests that Lumia was somehow defrauded in the execution of the collective bargaining agreement, and Defendant did not cite any record evidence in its 56.1 Response in support of this argument, or include its own 56.1 counterstatement of facts.

From the Court's review of the sections of Lumia's deposition submitted in support of Defendant's opposition, he does not appear to suggest at any point that the collective bargaining agreement was fraudulently executed.  At his deposition, Lumia was presented with the collective bargaining agreement between Defendant and the Union.  (*See* Def.'s Lumia Dep. 34.) He testified that he had never seen the contract before, and did not know what it requires.  (*Id.* at 35.)  But he was then shown the signature page of the same contract, confirmed that it bore his signature, and testified that he understood that he "was signing a contract with the [U]nion," and that it required him to "contribute to the [F]unds" and "remit deductions to the [U]nion."  (*Id.* at 36.)  Lumia thus confirmed that he understood the terms of the collective bargaining agreement when he signed it, and there is no record evidence suggesting that the collective bargaining agreement he signed contained terms that were different than what he understood.

Lumia was also shown another contract, which he referred to as "the salt contract." (*Id.* at 37.) Lumia explained that the salt contract "was designed to, from my understanding, be less money in benefits during the months that I hauled salt." (*Id.* at 37–38.) He was not sure whether he personally signed the document. (*Id.* at 38.)[3] Lumia testified that he met with a union representative named Dominick Cassanelli ("Cassanelli") to discuss the salt contract, and that he understood "[t]hat there was a salt contract in place and, basically, that it would be less money than the heavy construction contract. And when I say—by 'less money,' my understanding was it was going to be less in benefits. He indicated to me that it was going to be almost half. And my understanding of it was whenever I was hauling salt, that's when I would be paying . . . ." (*Id.* at 38–39.) Plaintiffs' counsel noted that the salt contract "covers the periods January through March," and Lumia responded that he "misunderstood when the salt rates applied," and that he believed the salt rates applied any time he was "hauling salt," rather than for the limited period covered by the contract. (*Id.* at 40.) Lumia also testified that when he asked to see the salt contract, the Union "told [him] there was no salt contract," but that he received "salt contribution forms" in March 2018. (*Id.*) Later in his deposition, Lumia again testified that

---

[3] The Court notes that "[t]he obligation to pay contributions under ERISA is not dependent on the employer having signed the relevant collective bargaining agreement"; rather, it is sufficient "if the employer has expressed an unequivocal intention to be bound in collective bargaining," including by submitting remittances and contributions under the agreement. *Gesualdi v. N. Star Concrete, Inc.*, No. 14-CV-4430, 2016 WL 7974111, at *7 (E.D.N.Y. Dec. 28, 2016) (citing, inter alia, *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999)), *adopted by* 2017 WL 354188 (E.D.N.Y. Jan. 24, 2017); *see also Bricklayers Ins. & Welfare Fund v. Gibraltar Contracting, Inc.*, No. 15-CV-4260, 2015 WL 6868969, at *2 n.1 (E.D.N.Y. Nov. 9, 2015) ("The motion candidly notes that plaintiffs cannot find a signature page by which [the company] signed on individually. Nevertheless, plaintiffs have submitted evidence showing that both by performance and express acknowledgement, [the company] considered itself bound by this agreement. This is a common occurrence in the contracting industry, and the cases have held this to be adequate.").

"[his] interpretation is that [he] was a little misle[d] on the salt contract." (*Id.* at 89.) With respect to the formation of the salt contract, Lumia explained:

> [I]t's just two guys talking at that big round table in the union hall, and there's no lawyers, there's no contracts on the table, there's nothing in writing, and [Cassanelli] is telling me that this is great: We have a salt contract while you're doing salt. You pay half of what you're paying on the construction agreement. . . . Little did I know that it wasn't while we were doing salt, it was just whatever months the union says that you're allowed to charge—you know, pay on those three months, basically. And like I said, I'd never seen the actual contract until we were just about finished doing salt.

*Id.* at 89–90. A fair reading of Lumia's deposition is that he understood the terms of the collective bargaining agreement when he entered it, but believed that the subsequently-signed salt contract modified the payments he owed under it for a longer period of time than was actually provided for in the salt contract.

Nothing cited by Defendant suggests that union representatives defrauded Lumia about the nature of either agreement. Fraud in the execution requires "a misrepresentation as to the character or essential terms of a proposed contract, and [that] a party signs without knowing or having a reasonable opportunity to know of its character or essential terms." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir. 1997) (citations and quotation marks omitted). Defendant identifies no specific misrepresentation that was made as to the nature or terms of the Agreements. *Compare Hetchkop*, 116 F.3d at 33–34 (finding genuine issue of fact with respect to fraud in the execution defense where union representatives intentionally created a distraction and substituted contract with different terms before the defendant signed), *with Del Turco*, 623 F. Supp. 2d at 336 (holding no fraud in the execution where "there is nothing in the record to suggest that the terms contained in either one or both of the articles substituted any essential term that [the company president] thought he was agreeing to but, in fact, was not"); *cf. Globaltech, Inc. v. Glob. Encasement, Inc.*, No. 99-CV-4307, 2009 WL 3352751, at *22

(E.D.N.Y. Mar. 12, 2009) (finding the defendant sufficiently established fraud in the execution where the plaintiff company substituted pages of a contract after the defendant read it but before it was signed, and finding the cases cited by the plaintiff in opposition "factually distinguishable," because "[i]n each of those cases, the party claiming fraud signed a document prepared by the other party, failed to read or review the document at any time prior to signing, and later claimed that the terms of the signed agreement did not comport with his understanding of what the parties had discussed"). Lumia testified that Cassanelli assured him that the salt contract would allow him to pay less in contributions under the collective bargaining agreement, (Def.'s Lumia Dep. 89–90), but nowhere indicated that Cassanelli actually misled him about the time period covered by the salt contract, other than his own conclusion that he must have been misled, *see Elec. Workers Local 58 Pension Tr. Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 657 (6th Cir. 2000) (holding the defendant company failed to establish fraud in the execution where its argument "basically comes down to [the company owner's] claim that he was ignorant of the type of arrangement to which he was agreeing when he signed" the collective bargaining agreement at issue, but "failed to demonstrate that [he] carried out his basic responsibility to review" the agreement); *Del Turco*, 623 F. Supp. 2d at 336 (denying the defendants' summary judgment motion where the defendants failed to present "evidence in the record indicating that [the union] misrepresented the terms" of the agreements at issue, or facts "supporting an inference of 'excusable ignorance'" in light of the fact that the defendant company's president had not read the agreements and therefore "ha[d] not established what his understanding of the agreements was or what the purported misrepresentation was"); *In re Application of Coast To Coast Installations, Inc.*, No. 03-CV-1128, 2004 WL 886988, at *5 (S.D.N.Y. Apr. 27, 2004) (holding company failed to establish fraud in the execution of collective bargaining agreement

with union because "[t]here [wa]s no allegation . . . of a false statement as to the nature of the proposed contract and no substantiated assertion that one agreement was switched for another" (citation omitted)).

Furthermore, Defendant's allegation that Lumia was misled about the amount of the contributions required, even if true, would only establish fraudulent *inducement* to sign the salt contract, rather than fraud in the *execution*, which occurs when a party is led to sign a materially different contract than the one he believed he was signing, and thus cannot serve as a defense to Section 515. *See Benson*, 907 F.2d at 314 (noting that Section 515 bars an employer from raising the defense "that [it] was fraudulently induced to enter into the [collective bargaining] agreement" (citations omitted)); *see also McCaddin v. Se. Marine Inc.*, 567 F. Supp. 2d 373, 380 (E.D.N.Y. 2008) (noting that an example of fraud in the execution includes a situation in which "A and B reach an understanding that they will execute a written contract containing terms on which they have agreed," and "[i]t is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read" (quoting Restatement (Second) of Contracts § 163, illustration 2)); *ALA-Lithographic Pension Plan*, 141 F. Supp. 2d at 411 (holding "that the union committed fraud in the execution by intentionally substituting a[n] [agreement] that was materially different than the 1997 [agreement] in effect at the time," and "did so without disclosing the difference in the agreements and did so under circumstances in which [the defendant] did not know or have a reasonable opportunity to learn that [the new agreement] was a materially different agreement." (citing *Hetchkop*, 116 F.3d at 31)). No such circumstances are alleged here; instead, Defendant claims that Lumia was misled regarding the *extent* to which the salt contract would reduce his contributions owed under the pre-existing

collective bargaining agreement.  Defendant therefore alleges, at most, a "classic allegation of fraudulent inducement under well-settled contract principles."  *McCaddin*, 567 F. Supp. 2d at 381–82 (holding that the plaintiff was "trying to cloak a fraudulent inducement claim in the language of fraud in the execution" where he alleged that the defendants "fraudulent[ly] represented" that the contract he signed "was strictly a towing contract and had nothing [to do] with salvage," but there were no allegations that the defendants "substituted a different document before he signed it," that the plaintiff's "signature was forged," that he "lacked the mental capacity to sign such contract," or that he signed under duress (citation omitted)).  Because fraudulent inducement "renders contracts voidable, but not void," *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001), Defendant's allegation that Lumia was misled with respect to the scope of the salt contract, even if true, is no defense to a Section 515 ERISA claim, *see Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, No. 07-CV-5122, 2009 WL 349147, at *6–7 (D.N.J. Feb. 11, 2009) (holding with respect to a collective bargaining agreement that the defendant had raised a fraudulent inducement defense rather than fraud in the execution because "[the employer]'s misunderstanding regarding the contribution provisions was not whether the terms would be included, but whether those terms applied to all of his employees—a misunderstanding of scope").

Finally,  "[i]n order to prevail on such a defense, a party must show excusable ignorance of the contents of the writing signed."  *Hetchkop*, 116 F.3d at 32 (citation and quotation marks omitted).  "Proving excusable ignorance requires a showing that the party satisfied its basic responsibility of reading what it signed."  *Del Turco*, 623 F. Supp. 2d at 336 (citation and quotation marks omitted).  Defendant cited no evidence that Lumia ever attempted to read the agreements before signing them but was prevented from doing so.  Indeed, Lumia did not even

confirm that he was the person who signed the salt contract, the only contract about which he testified he was "misled." Without such evidence, Defendant cannot prevail on its defense of fraud in the execution. *Del Turco*, 623 F. Supp. 2d at 336 (finding the defendants were not entitled to a fraud in the execution defense where they "ha[d] not articulated any basis or provided any evidence in the record to support a reasonable inference that [the company president] did not have the opportunity to read the documents prior to signing them"); *Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers*, No. 05-CV-259, 2008 WL 312096, at *5 (E.D.N.Y. Feb. 1, 2008) (holding the plaintiff had not provided "any facts to show fraud-in-the-execution or other special circumstances which would render the terms of the [collective bargaining agreement] unenforceable" where it "d[id] not claim it was deprived of the opportunity to examine the one page [agreement] or that it did not understand its terms" (citation omitted)); *Trustees of Welfare Fund & Pension Fund of Local No. One v. A. Terzi Prods., Inc.*, No. 97-CV-8262, 1999 WL 33870, at *7 (S.D.N.Y. Jan. 25, 1999) (finding no "excusable ignorance" where the defendant "admitted that the [union] negotiators did not prevent or distract him from reading the final draft in full," and noting that "[b]ecause [union] representatives were preparing the document, [the defendant] reasonably should have been attuned to the need to carefully review the final text of the [a]greement to assure that it matched his expectations"). "To find that the [A]greements are void under these circumstances would require turning a blind eye to the clearly established precedent regarding a signatory's obligation to the contract that he signs." *Victorio v. Sammy's Fishbox Realty Co.*, No. 14-CV-8678, 2015 WL 2152703, at *15 (S.D.N.Y. May 6, 2015).

Because Defendant has failed to create a genuine issue of material fact with respect to its only raised defense, and has not otherwise opposed Plaintiffs' Motion, Plaintiffs are entitled to

summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (noting that "[t]he mere existence of a scintilla of evidence in support of [a party's] position" is "insufficient" to defeat summary judgment).

### 3.  Damages and Attorneys' Fees

Plaintiffs argue that Defendant owes a total of $167,847.54 for its lapsed payments, representing $145,592.86 in fringe benefit contributions and deductions related to hours worked by Defendant's employees for the period of May 22, 2017 through September 30, 2018, $5,148.90 in interest as of December 14, 2018, $14,293.28 in liquidated damages, and $2,812.50 in audit fees, as well as $42,935.21 in attorneys' fees and costs.  (Pls.' Mem. 2.)  In support, Plaintiffs submitted the affidavit of Demetri Katartzis ("Katartzis"), an accountant who was retained to determine the amount of overdue contributions, deductions, and interest owed to the Funds for work by Defendant's employees, which included an independent accountants' report (the "Accountants' Report") detailing the breakdown of the amounts owed.  (*See* Aff. of Demetri Katartzis ("Katartzis Aff.") (Dkt. No. 34-2).)  Plaintiffs also provided detailed time records for the hours expended by counsel on this Action, and seek $42,935.21 based on an hourly rate of $250.  (Pls.' Mem. 9–10; Kornfeld Aff. Ex. C. ("Time Records").)  Defendant makes no objection to the calculation of damages other than its overarching objection that the Agreements were void.  (*See* Def.'s Mem. 3.)  Because that argument was been rejected, the Court awards Plaintiffs $167,847.54 in damages for Defendant's delinquent contributions, interest, liquidated damages, and audit fees.  *See Gesualdi*, 2016 WL 7974111, at *9 (granting summary judgment and awarding damages sought by the plaintiff where "[the defendant] has offered no argument [with respect to contributions owed] other than the argument it is not bound to the [collective bargaining agreement]").

Defendant did object to Plaintiffs' request for attorneys' fees, arguing that the amount sought is "exorbitant" for a "routine delinquency case." (Def.'s Mem. 4.) Defendant notes that Plaintiffs seek "reimbursement for time expended by 3 partners" despite the fact that only one, Mr. Kornfeld, "has appeared and participated in this [A]ction." (*Id.*) Defendant also points out that Plaintiffs seek reimbursement for the work of a paralegal on documents that were never ultimately submitted to the Court, including a proposed amended pleading and a motion to disqualify Defendant's counsel. (*Id.*) Defendant cited no caselaw in support of its position that such work may not be recovered, and alleged no facts and cited no evidence in support of its assertion that Kornfeld was the only attorney who worked on this case on behalf of Plaintiffs.

Section 502 of ERISA states that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [S]ection 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D) (emphasis added). Plaintiffs are thus entitled to an award of attorneys' fees and costs.

Defendant does not object to the $250 hourly rate Plaintiffs seek to recover. The Court finds this rate well within the realm of what is reasonable for attorneys in the Southern District of New York. *See, e.g.*, *Coakley v. Webb*, No. 14-CV-8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (concluding "that a $575 hourly rate credits the extensive experience and qualifications of [the attorneys seeking reimbursement]"); *Munoz v. Manhattan Club Timeshare Ass'n.*, No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour to be a reasonable rate for an experienced litigator with nearly 20 years of experience), *aff'd*, 607 F. App'x 85 (2d Cir. 2015); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (finding "$600 [to be] a reasonable rate" for two senior lawyers and finding a

rate of $375 an hour for an attorney with 10 years of experience "consistent with rates recently awarded to comparably experienced lawyers in this district" (collecting cases)); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010) ("A rate of $550 is . . . consistent with rates awarded in this district for experienced . . . lawyers." (citation omitted)); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08-CV-5458, 2009 WL 2482134, at *4 (S.D.N.Y. Aug. 13, 2009) (finding "a rate of $400 per hour . . . reasonable" for a litigator with over 13 years of experience (citations omitted)); *Sheehan v. Metro. Life Ins.*, 450 F. Supp. 2d 321, 327–328 (S.D.N.Y. 2006) (finding attorneys' fees at rate of $425 an hour for senior partners, $300 an hour for associates, and $150 for paralegals in a breach of contract case reasonable); *see also Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Pulco, Inc.*, No. 17-CV-1106, 2017 WL 5634129, at *6 (S.D.N.Y. Nov. 22, 2017) (confirming arbitration award and awarding attorney's fees for rates of $300 per hour for the attorney working on the case).  Finding no reason to question the reasonableness of the requested rates in light of counsels' extensive experience and the prevailing rates in the Southern District of New York, the Court concludes the rates sought by the respective attorneys here are reasonable.  *See Makinen v. City of New York.*, No. 11-CV-7535, 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (calculating "the presumptively reasonable fee based off the rates requested" in the absence of any challenge to the general reasonableness of the billing rates); *Balu v. City of New York*, No. 12-CV-1071, 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (explaining that "the [c]ourt will not adjust the rate sought" because the respondent "do[es] not challenge the reasonableness of the hourly rate [the [p]etitioner's attorney] seeks").

Defendant has not explained its objection to recovery of fees for all three partners who worked on Plaintiffs' case, or provided a basis for its assertion that only Mr. Kornfeld

participated in this case.  So long as the total fees sought are reasonable and supported by detailed time records, Plaintiffs may recover fees for all attorneys and paralegals who worked on this Action.  *See HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-5867, 2018 WL 6079932, at *4 (E.D.N.Y. Nov. 21, 2018) ("The fact that [counsel] did not file a notice of appearance in this case does not prevent him from performing legal services on behalf of a client and billing that client accordingly."); *Cruceta v. City of New York*, No. 10-CV-5059, 2012 WL 2885113, at *3 (E.D.N.Y. Feb. 7, 2012) (rejecting argument that fees are not owed for attorney who did not file notice of appearance and noting that the right to attorneys' fees "is limited neither by some artificial boundary on the number of attorneys [a party] may engage, nor by some maximum amount of work that his [or her] attorneys may perform 'behind the scenes,' but only by the principle that the fees be reasonable"), *adopted by* 2012 WL 2884985 (E.D.N.Y. July 13, 2012).

With respect to the reasonableness of the total hours expended in this Action, "[a] court evaluating the reasonableness of the number of hours claimed must examine the attorney's records that detail the time expended," *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, at *4 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013), but must also check those records against "its own familiarity with the case and its experience generally," *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).  In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted); *see also Coakley*, 2016 WL 1047079, at *6 (same).  When reviewing a fee application, the Court must "exclude hours that were not reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (citation and quotation marks omitted).

The only objection Defendant made with respect to the reasonableness of hours expended is that Plaintiffs may not recover for the preparation of documents that were never filed.  (*See* Def.'s Mem. 4.)  Although Defendant did not cite any particular entry that it believed the Court should strike, or any caselaw in support of its argument, Defendant is nonetheless correct that in the Second Circuit a party typically cannot recover attorneys' fees for work on motions that were never filed.  *See Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998) (affirming district court's refusal to award attorneys' fees "for some 35 hours spent preparing for motions that were never filed"); *Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *13 (S.D.N.Y. May 31, 2019) (disallowing hours "spent researching and drafting a motion . . . that was never filed" (citation omitted)), *adopted by* 2019 WL 2544666 (S.D.N.Y. June 20, 2019); *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586, 2017 WL 1215004, at *13 (S.D.N.Y. March 31, 2017) (deducting hours billed for "a motion that was never filed"), *adopted by* 2017 WL 4350567 (S.D.N.Y. June 28, 2017), *aff'd*, 719 F. App'x 90 (2d Cir. 2018); *Nat'l Audubon Soc'y, Inc. v. Sonopia Corp.*, No. 09-CV-975, 2010 WL 3911261, at *5 (S.D.N.Y September 1, 2010) (disallowing hours spent on a motion that lacked a factual or legal basis), *adopted by* 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (noting that "counsel may be denied compensation for work done on motions that were never filed" and collecting cases); *Smart SMR of N.Y., Inc. v. Zoning Comm'n of Stratford*, 9 F. Supp. 2d 143, 152 (D. Conn. 1998) (declining to award fees for default judgment that was never filed and unnecessary).  Plaintiffs are therefore directed to file a revised application for attorneys' fees within 14 days of this Opinion, omitting any entries from the submitted time records for work performed on motions or other documents that were not ultimately filed.

## III. Conclusion

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is granted.

Plaintiffs are awarded $167,847.54 in total damages and costs. Plaintiffs' request for attorneys'

fees is denied without prejudice; Plaintiffs are to submit a revised fee application within 14 days

removing any time entries for work performed on documents not ultimately filed in this Action.

The Clerk is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 34.)

SO ORDERED.

Dated: August 22, 2019
     White Plains, New York

KENNETH M. KARAS
United States District Judge