Bernard T. King
Charles E. Blitman*
Jennifer A. Clark
Kenneth L. Wagner
Timothy R. Bauman
Nathaniel G. Lambright
Daniel E. Kornfeld
Daniel R. Brice
Ginger B. LaChapelle
Brian J. LaClair
Bryan T. Arnault*
Michael R. Daum**

Nolan J. Lafler
Imani M. Shaw

*Of Counsel*
James R. LaVaute
Jules L. Smith
Donald D. Oliver

\*  Also admitted in MA
◌  Also admitted in MD
◊  Also admitted in DC
\*\*Also admitted in NJ
▢  Also admitted in PA

# Blitman&King
## LLP

Attorneys and Counselors at Law

Syracuse • Rochester • New York • Albany

*bklawyers.com*

One Penn Plaza, Suite 2601
New York, NY 10119-2699
Phone: 212.643.2672
Fax: 315.471.2623

Kelly L. Cook, CEBS
Leslie A. DuMond, CEBS
Marlene G. Naistadt, MBA
Rachel Stolar, CEBS

Nathan H. Blitman
(1909-1990)

July 16, 2020
*dekornfeld@bklawyers.com*

**MEMO ENDORSED**

**VIA ELECTRONIC FILING AND REGULAR MAIL**

The Honorable Kenneth M. Karas
United States District Judge
300 Quarropas Street, Courtroom 521
White Plains, New York 10601-4150

> **Re:   *Picani, et al. v. CRL Transportation, Inc.*,**
> **Civil Action No.: 7:18-cv-02056 (KMK)**

Dear Judge Karas:

This firm represents the Plaintiffs / Judgment Creditors Trustees of the Teamsters Local 456 Funds and Westchester Teamsters Local Union No. 456 in the above referenced case. This letter responds to the Order entered on July 2, 2020 [Docket No. 65]. A copy of the Order is enclosed for your convenience. This letter respectfully requests that the Court stay the deadlines in the Order for the following reasons.

As stated in footnote 5 of the Order, one issue central to a second motion for a "turn over" order for these motor vehicles involves whether the District Court will order Lumia Leasing, Inc. and/or Christopher Lumia, personally, to deliver the vehicles to enforce the judgment. I copied both of these alleged *alter egos* on this letter as noted below. I also copied the alleged leasors of these motor vehicles as also noted below. With these copies, Plaintiffs notify them of this request and provide them with an opportunity to retain counsel to respond to it as they deem appropriate.

A similar issue is currently the subject of litigation in another case before this District Court involving these same Plaintiffs. *See Teamsters Local 456 Pension Fund, et al. v. Lumia Leasing, Inc.*, Civil Action No. 7:20-cv-02420 (CS). Again, I copied Judge Seibel and the counsel of record in the other case as further noted below. Plaintiffs expect a central issue of this other case to involve whether Lumia Leasing, Inc. and Christopher Lumia, personally, are responsible for contributions, deductions, and other amounts owed to Plaintiffs / Judgment Creditors based on their relationship with Defendant / Judgment Debtor CRL Transportation, Inc.

{B0156288.1}



July 16, 2020
Page 2

Moreover, the Court may eventually decide to consolidate these cases pursuant to Rule 42 of the Federal Rules of Civil Procedure. In responding to a motion for consolidation, the courts consider:

> "(i) the convenience and economy of the time relating to the parties or their witnesses, (ii) the convenience and economy of the Court, (iii) the possibility that by a determination of one issue the trial of other issues would be avoided, (iv) the degree of repetition that might be involved in determining the cases separately, (v) whether both cases would be determinable by a jury or whether one would be a matter solely within the cognizance of the Court, and (vi) whether the trying of the cases together would necessarily work prejudice against one or the other of the parties, which could not be avoided by proper instructions."

See *Larsen v. Powell*, 16 F.R.D. 322, 323 (D. Colo. 1954). Pursuant to these standards, motions to consolidate should be granted to avoid repetitious actions and for the convenience of the parties and the Court absent prejudice to a party opposing the motion. See e.g., *Hannah v. Wal-Mart Stores, Inc.*, 2015 U.S. DIST LEXIS 78306, *17 (D. Conn. June 17, 2015); *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 884 (D. Md. 2012).

It is premature for the parties to move for consolidation because the defendants in the other case have not filed an answer to the complaint, yet. Nevertheless, Plaintiffs / Judgment Creditors anticipate that the Court may ultimately conclude that consolidation is necessary to avoid repetition, to conserve resources, and to prevent inconsistent rulings for these related parties. To give the parties time to manage the overlapping concerns related to these civil actions, Plaintiffs / Judgment Creditors respectfully request that the District Court stay the deadlines set forth in the enclosed Order.

Prior to submitting this letter to the Court, I contacted counsel for Defendant / Judgment Debtor regarding consent to this request to stay the deadlines in the Order. As a result of an exchange of e-mail messages, Defendant / Judgment Debtor declined to consent to this request. Nonetheless, Defendant / Judgment Debtor will elaborate on its position regarding the Order in a separate letter as it deems appropriate.



July 16, 2020
Page 3

Thank you for your consideration of this request.

Respectfully submitted,

**BLITMAN & KING LLP**

Daniel Kornfeld

DK/cls
Encs.

Defendant is to respond to this letter by 7/20/20.

cc:   The Honorable Cathy Seibel (w/ enc.)        So Ordered.
      United States District Judge
      300 Quarropas Street, Courtroom 620
      White Plains, New York 10601

      7/16/20

      **VIA REGULAR MAIL AND E-MAIL**
      Karin Arrospide, Esq. (w/ enc.)
      50 Main Street, Suite 1000
      White Plains, New York 10606
      E-mail: Karin@ArrospideLaw.com

      Michael S. Adler, Esq. (w/ enc.)
      Cohen Weiss & Simon LLP
      900 Third Ave., Suite 2100
      New York, New York 1022-4869

      Andrew Mackle, Fund Administrator (w/ enc.)
      Teamster Local 456 Funds
      160 South Central Ave.
      Elmsford, New York 10523

      Lumia Leasing, Inc. (w/ enc.)
      c/o President Christopher Lumia
      12 Bass Road
      Mahopac, New York 10541

      Mr. Christopher Lumia (w/ enc.)
      12 Bass Road
      Mahopac, New York 10541

{B0156288.1}

July 16, 2020
Page 4

> Jim Reed's Leasing, Inc. (w/ enc.)
> Old Albany Post Road
> Cortlandt Manor, New York 10567
>
> Caterpillar Financial Services Corp. (w/ enc.)
> 2120 West End Ave.
> Nashville, Tennessee 37203-0001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAMSTERS LOCAL 456 PENSION, HEALTH & WELFARE, ANNUITY, EDUCATION & TRAINING, INDUSTRY ADVANCEMENT AND LEGAL SERVICES FUNDS *by Louis A. Picani, Joseph Sansone, Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs as Trustees and Fiduciaries of the Funds*; *and* WESTCHESTER TEAMSTERS LOCAL UNION NO. 456, | No. 18-CV-2056 (KMK) |
| | ORDER |
| Plaintiffs, | |
| v. | |
| CRL TRANSPORTATION, INC. | |
| Defendant. | |

KENNETH M. KARAS, United States District Judge:

Teamsters Local 456 Pension, Health & Welfare, Annuity, Education & Training,

Industry Advancement and Legal Services Funds by Louis A. Picani, Joseph Sansone, Dominick

Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs as Trustees and Fiduciaries of the

Funds (the "Funds") and Westchester Teamsters Local Union No. 456 (the "Union"; collectively,

"Plaintiffs," or "Judgment Creditors") brought this Action against CRL Transportation, Inc.

("Defendant," or "Judgment Debtor"), alleging that Defendant failed to remit employee benefit

contributions to the Funds as required under the Parties' collective bargaining agreements, in

violation of § 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1145. (*See generally* Compl. (Dkt. No. 4).)[1] Plaintiffs have now filed a Motion for a Turn

Over Order (the "Motion") to compel Defendant to deliver certain motor vehicles to the

Westchester County Sheriff to satisfy a judgment previously entered by this Court. (*See* Not. of

Mot. (Dkt. No. 55); Pls.' Mem. of Law in Supp. of Mot. ("Pls.' Mem.") 1 (Dkt. No. 57).) In the

alternative, the order would require Defendant to "confirm sufficiently that the motor vehicles

are not available for satisfaction of the [j]udgment." (Pls.' Mem. 1.) Within their Memorandum,

Plaintiffs also request a preliminary injunction that would prohibit Defendant from transferring

the motor vehicles and frustrating the judgment. (*Id.* at 4–5.) For the following reasons,

Plaintiffs' Motion is denied without prejudice. Further, Plaintiffs' pending Motion To Compel

Discovery, (Dkt. No. 43), is denied as moot.

## I. Background

On August 22, 2019, this Court granted Plaintiffs' Motion for Summary Judgment, (*see*

Op. & Order (Dkt. No. 38)), and entered a judgment in favor of Plaintiffs in the amount of

$212,639.58 plus post-judgment interest on September 16, 2019 (the "Judgment"). (*See* Order

(Dkt. No. 42).) On October 22, 2019, Plaintiffs filed a Motion To Compel Discovery (the

"Motion To Compel"), seeking an order compelling Defendant to produce documents related to

enforcement of the Judgment. (Not. of Mot. To Compel (Dkt. No. 43); Pls.' Mem. of Law in

Supp. of Mot. To Compel (Dkt. No. 44); Aff. of Daniel Kornfeld, Esq. in Supp. of Mot. To

Compel (Dkt. No. 45).) Pursuant to a deadline set by the Court, Defendant filed an Affirmation

in Opposition to the Motion To Compel on November 14, 2019. (Aff'n of Karin Arrospide, Esq.

in Opp'n to Mot. To Compel (Dkt. No. 47).) One day later, Plaintiffs filed a Letter requesting

that the Court "hold Plaintiffs' Motion To Compel . . . in abeyance for two . . . weeks," given

---

[1] The Complaint was originally filed on March 7, 2018, but, due to a filing error, was re-filed on March 8, 2018. (*See* Dkt. Nos. 1, 4.) The Court refers to the re-filed Complaint herein.

2

that Defendant had produced written responses, "some of the responsive documents," and had
scheduled a deposition of Christopher Lumia ("Lumia"), Defendant's president. (Letter from
Daniel Kornfeld, Esq. to Court (Nov. 15, 2019) ("Nov. 15 Kornfeld Letter") (Dkt. No. 48).) The
Court granted this request. (Dkt. No. 49.)

On November 21, 2019, Plaintiffs deposed Lumia, who testified that Defendant had
insufficient assets to pay the Judgment and did not expect to have income or assets in the next
nine to 12 months. (Aff. of Daniel Kornfeld, Esq. in Supp. of Mot. ("Kornfeld Aff.") Ex. B-1
("Lumia Dep. Tr. A"), at 12–13 (Dkt. Nos. 56, 56-2).) During the deposition, Plaintiffs' counsel
reviewed tax returns and bank statements with Lumia to confirm that Defendant had no assets to
satisfy the Judgment against it. (*Id.* at 13.) Lumia did confirm that two trucks and two trailers
remained in his, or Defendant's, possession, which were stored in Cortlandt Manor, New York
and leased from Jim Reed's Truck Sales ("Jim Reed"). (*Id.* at 28–29, 31–35, 41–42.) According
to Plaintiffs, these motor vehicles are specifically: (1) a 2017 semi-trailer with vehicle
identification number ("VIN") 5MADA3344HCO40020; (2) a 2017 semi-trailer with VIN
number 5MADA3448HCO36003 (with the first semi-trailer, the "Semi-Trailers"); (3) a 2010
Peterbilt 389 tractor with VIN number 1XPXD40X2AD113254 (the "2010 Peterbilt"); and (4) a
2005 Peterbilt 379 tractor with VIN number 1NP5DB0XX5N847338 (the "2005 Peterbilt"; with
the 2010 Peterbilt, the "Trucks"). (Pls.' Reply Mem. in Supp. of Mot. ("Pls.' Reply Mem.") 1
(Dkt. No. 63).) Lumia also testified that Defendant owned a "Cat Skid Steer," which appears to
be leased "from Cat Financial" in Poughkeepsie, New York. (Kornfeld Aff. Ex. B-2 ("Lumia
Dep. Tr. B"), at 62 (Dkt. No. 56-3).) Plaintiffs specify that this vehicle is a Caterpillar 232D
Skid Steer Loader (the "Skid Steer Loader"), with serial number DPR00290. (Pls.' Reply Mem.

3

1.) According to Lumia, payments are still owed on the Skid Steer Loader. (Lumia Dep. Tr. B 62–63.)

With respect to the Semi-Trailers and Trucks, Lumia testified that these vehicles were released to Lumia Leasing, Inc. ("Lumia Leasing"), of which Lumia is the founder, president, and sole officer, and that as the lessor, Jim Reed still holds title to them. (*Id.* at 77, 79, 84.) According to Lumia, Defendant "resumed business under Lumia Leasing . . . for insurance purposes," because E-Z Pass "suspended [Lumia's] registrations under [Defendant's name] for nonpayment." (*Id.* at 79.) Thus, "in order to try to keep going, [Lumia] started operating under Lumia Leasing." (*Id.*) Lumia also testified that Lumia Leasing did not take over customers, accounts, or jobs from Defendant; does not have active jobs or work from anyone; does not have the same insurance provider as Defendant; and has not received, loaned, or transferred money to or from Defendant. (*Id.* at 83–86.) However, Lumia Leasing and Defendant do share a bookkeeper. (*Id.* at 86.)

On November 25, 2019, Plaintiffs filed another Letter with the Court, requesting an additional three-week adjournment before the Court turned to Plaintiffs' Motion To Compel. (Letter from Daniel Kornfeld, Esq. to Court (Nov. 25, 2019) ("Nov. 25 Kornfeld Letter") 1 (Dkt. No. 50).) Plaintiffs explained that although Lumia testified that Defendant had ceased operations and was unable to satisfy the Judgment, Plaintiffs had requested additional information regarding the vehicles mentioned by Lumia in his deposition and "[sought] confirmation concerning the repossession of the vehicles by the lessors as well as documents showing that the listed motor vehicles were sold or transferred without proceeds available for collection." (*Id.* at 1–2.) The Court granted this request. (Dkt. No. 51.)

4

On December 16, 2019, Plaintiffs again requested a three-week adjournment before the

Court "t[ook] further action concerning the Motion [To Compel]," as they continued their

investigation of the aforementioned vehicles. (Letter from Daniel Kornfeld, Esq. to Court (Dec.

16, 2019) ("Dec. 16 Kornfeld Letter") 1–2 (Dkt. No. 52).) Plaintiffs explained that they had

obtained an affidavit from Bryan Murphy ("Murphy"), a representative of Atlantic Salt, Inc.

("Atlantic Salt"), a company that allegedly previously employed Defendant, making certain

claims about Lumia. (*Id.* at 1.)[2] Plaintiffs therefore "require[d] confirmation that . . . Lumia

[wa]s not using [Defendant's] vehicles to perform work under the auspices of a related

business," and explained that if Defendant had "misappropriated the vehicles for use by another

business," Plaintiffs would seek a turn over order from the Court. (*Id.*) The Court again granted

Plaintiffs' request. (Dkt. No. 53.)

On January 6, 2020, Plaintiffs filed a final Letter with the Court, claiming that they had

not received "sufficient confirmation from Defendant . . . that the five motor vehicles

described . . . ha[d] either been repossessed or otherwise disposed of by [Defendant] without

circumventing the [J]udgment," and stating that they would seek a turn over order from the

---

[2] Specifically, Murphy stated that in June or July 2019, Lumia informed Atlantic Salt that
Lumia Leasing was available to provide "hauling services." (Kornfeld Aff. Ex. C ("Subpoena
Responses"), at 31 (Dkt. No. 56-4).) Prior to this phone call, Atlantic Salt had last used
Defendant for a hauling project on March 25, 2019. (*Id.*) Lumia, however, testified that this
phone call did not occur. (Lumia Dep. Tr. B 82–83.)

Plaintiffs also submit an Affidavit from Joseph Fierravante ("Fierravante"), who operates
a landscaping business that hired Lumia to haul sand in late 2019. (Reply Aff. of Joseph
Fierravante ("Fierravante Reply Aff.") ¶¶ 3, 4 (Dkt. No. 64).) According to Fierravante, Lumia
asked him to make checks payable to Lumia Leasing, and one of the trucks used for the services
said "CRL" on the side. (*Id.* ¶¶ 4, 6.) Lumia allegedly explained that he had "not gotten around
to writing anything on the side of the truck, yet." (*Id.* ¶ 4.) Defendant has not replied to
Fierravante's assertions, which were submitted with Plaintiffs' Reply Memorandum.

The Court notes that because the pages in Exhibit C to the Declaration of Daniel
Kornfeld, Esq. (the "Subpoena Responses") are inconsistently numbered, the Court refers to the
ECF-stamped page numbers at the top.

Court. (Letter from Daniel Kornfeld, Esq. to Court (Jan. 6, 2020) ("Jan. 6 Kornfeld Letter") 1
(Dkt. No. 54).) Plaintiffs then filed the instant Motion on January 17, 2020. (Not. of Mot.; Pls.'
Mem.; Kornfeld Aff.) After receiving an extension from the Court, (Dkt. Nos. 58–59),
Defendant filed its Opposition on February 7, 2020, (Decl. of Karin Arrospide, Esq. in Opp'n to
Mot. ("Arrospide Decl.") (Dkt. No. 60); Def.'s Mem. in Opp'n to Mot. ("Def.'s Mem.") (Dkt.
No. 60-2)). On February 28, 2020, also after receiving an extension from the Court, (Dkt. Nos.
61–62), Plaintiffs filed their Reply, (Pls.' Reply Mem.; Fierravante Reply Aff.).

## II. Discussion

### A. Legal Standard

"Federal courts have the authority to enforce their judgments, and retain jurisdiction over
supplementary proceedings to do so." *Deflora Lake Dev. Assocs., Inc. v. Hyde Park*, No. 13-
CV-4811, 2016 WL 7839191, at *1 (S.D.N.Y. June 9, 2016) (footnote omitted) (citing *Peacock
v. Thomas*, 516 U.S. 349, 356 (1996)), *aff'd*, 689 F. App'x 93 (2d Cir. 2017). Plaintiffs bring
this Motion under Federal Rule of Civil Procedure 69, (Not. of Mot. 2), which "provides, in
relevant part, that the 'procedure on execution' in federal court upon a money judgment 'must
accord with the procedure of the state where the court is located.'" *Mitchell v. Garrison
Protective Servs., Inc.*, 819 F.3d 636, 638 (2d Cir. 2016) (per curiam) (quoting Fed. R. Civ. P.
69(a)(1)). Article 52 of New York's Civil Practice Law and Rules ("CPLR") governs the
enforcement and collection of money judgments in New York. *See* N.Y. C.P.L.R. §§ 5201–53.
Plaintiffs seek relief under §§ 5225, 5233, and 5234 of this statute. (Pls.' Mem. 1.)

Where property is in the possession of a judgment debtor, CPLR § 5225(a) permits a
court, "[u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where
it is shown that the judgment debtor is in possession or custody of money or other personal

6

property in which he has an interest, . . . [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff." N.Y. C.P.L.R. § 5225(a). Where property is not in possession of a judgment debtor, CPLR § 5225(b) "allows a judgment creditor to commence a [special] proceeding to order a third party to turn over the judgment debtors' assets." *Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014) (footnote omitted); *see also* N.Y. C.P.L.R. § 5225(b). With respect to § 5225(b), "it is unnecessary for [Plaintiffs] to file a separate action or 'special proceeding' under New York law because [Federal Rule of Civil Procedure] 69(a) does not require strict adherence to state procedural law, and . . . the judgment creditor may seek the relief provided under state law through a motion made in the original federal action." *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at *1 (omission in original) (citations and some quotation marks omitted); *see also Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) ("[T]he filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues." (citation omitted)).

CPLR § 5201 "describes the assets that New York has made subject to enforcement, and thus available to judgment creditors[] seeking to collect under § 5225." *Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14-CV-6512, 2017 WL 3394604, at *4 (S.D.N.Y. Aug. 8, 2017) (quoting *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014)). The provision allows that a "money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether

or not it is vested, unless it is exempt from application to the satisfaction of the judgment." N.Y.
C.P.L.R. § 5201(b). Finally, "[t]he posture of this proceeding is like that of a summary judgment
motion." *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at \*2 (citing, inter alia, *HBE Leasing
Corp. v. Grank*, 48 F.3d 623, 633 (2d Cir. 1995)). As such, "[r]elief under this section, when
based on the parties' submissions alone, can be granted only where there are no genuine issues of
material fact" and "is warranted only if the entire record would inevitably lead a rational trier of
fact to find in [Plaintiffs'] favor." *Neshewat v. Salem*, 365 F. Supp. 2d 508, 525 (S.D.N.Y. 2005)
(citation, alteration, and quotation marks omitted), *aff'd*, 194 F. App'x 24 (2d Cir. 2006).

### B.  Application

Plaintiffs seek an order from the Court compelling Defendant to deliver the five motor
vehicles detailed above or, alternatively, to confirm that the vehicles are not available for
satisfaction of the Judgment. (Pls.' Mem. 1, 6.) Plaintiffs also argue that they are entitled to a
preliminary injunction that would prohibit Defendant from transferring the five vehicles in
frustration of the Judgment. (*Id.* at 4–5.) Plaintiffs further contend that Lumia Leasing is an
alter ego of Defendant, and that any transfers of equipment from Defendant to Lumia Leasing
may be set aside as fraudulent conveyances. (Pls.' Reply Mem. 4–8.) Defendant claims that
Plaintiffs' moving papers are deficient, that Plaintiffs cannot enforce the Judgment against
Lumia Leasing or Lumia, that the "tools of the trade" exemption under CPLR § 5205(a)(7)
applies to the motor vehicles, and that Plaintiffs are not entitled to a preliminary injunction.
(Def.'s Mem. 4–8.) The Court addresses each of these arguments to the extent necessary.

#### 1.  Application of CPLR § 5225(a)

Although Defendant argues that Plaintiffs' moving papers are deficient because, inter
alia, Plaintiffs have not indicated whether their Motion falls under CPLR §§ 5225(a), 5225(b), or

8

both, the Court does not consider this omission detrimental to Plaintiffs' Motion, and Defendant
does not provide any legal support to the contrary. (*See* Def.'s Mem. 4.) As such, the Court
assesses the sufficiency of Plaintiffs' Motion under both sections of the statute.

Under § 5225(a), "where it is shown that the judgment debtor *is in possession or custody*
of money or other personal property in which he has an interest, the court shall order that the
judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the
judgment creditor." N.Y. C.P.L.R. § 5225(a) (emphasis added). Plaintiffs argue that based on
Lumia's deposition testimony, Defendant "owns or possesses five motor vehicles"—the Semi-
Trailers, the Trucks, and the Skid Steer Loader. (Pls.' Mem. 3; Kornfeld Aff. ¶ 7.) However,
Lumia's testimony raises issues of fact as to whether Defendant itself currently possesses these
vehicles, and thus relief under § 5225(a) is not warranted. For example, although Lumia did
confirm that Defendant leased the Trucks and Semi-Trailers itself, (Lumia Dep. Tr. A 28–29, 31,
34, 41–42), he also testified that the Trucks and Semi-Trailers have been re-leased to Lumia
Leasing, and that Jim Reed still holds the title to these vehicles, (Lumia Dep. Tr. B 84).
Defendant further claims that the 2010 Peterbilt was leased to Lumia Leasing directly, (Def.'s
Mem. 5–7), which, although in conflict with Lumia's testimony, also raises a question as to
whether these vehicles are actually "in the possession of [the] judgment debtor" under CPLR
§ 5225(a). Thus, based on the current record, the Court cannot grant Plaintiffs' Motion on the
basis of § 5225(a). *See Arrowhead Capital Fin.*, 2017 WL 3394604, at *3 ("*Where property is
in possession of a judgment debtor*, [§] 5225[(a)] permits a court . . . to order that the judgment
debtor pay the money . . . to satisfy the judgment, . . . and, if the amount to be so paid is
insufficient to satisfy the judgment, to deliver any other personal property . . . to a designated
sheriff." (emphasis added) (citation and alteration omitted)); *Erin Capital Mgmt., LLC v. Celis*,

9

854 N.Y.S.2d 640, 642 (Dist. Ct. 2008) ("The court will not compel the judgment debtor to deliver property that has not clearly been shown to be in the judgment debtor's possession or control." (citation and quotation marks omitted)). Instead, CPLR § 5225(b) is the operative provision under which to consider Plaintiffs' Motion.[3]

### 2. Application of CPLR § 5225(b)

In response to Defendant, Plaintiffs argue that to the extent any vehicles were re-leased to Lumia Leasing, such a conveyance was fraudulent, and that, as an "alter ego" of Defendant, Lumia Leasing should be held jointly and severally liable for the Judgment. (Pls.' Reply Mem. 5.) Thus, Plaintiffs appear to seek a turn over order pursuant to CPLR § 5225(b), under which the Court may "order a third party to turn over the judgement debtors' assets." *Multibank, Inc. v. Access Glob. Capital LLC*, No. 17-CV-3467, 2017 WL 6028535, at *5 (S.D.N.Y. Dec. 4, 2017) (quotation marks omitted) (quoting *Tire Eng'g & Distrib.*, 740 F.3d at 110). It is well-established that § 5225(b) "provides a procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," *id.* at *6 (citation and quotation marks omitted), and "[i]t is equally well-settled that this statute may be used to pierce the corporate veil or assert alter-ego liability," *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010) (citation omitted).

To the extent Plaintiffs seek to have the Court void allegedly fraudulent conveyances from Defendant to Lumia Leasing, it would be pursuant to New York Debit and Credit Law §§ 273–276. "A fraudulent conveyance is a transfer made without fair consideration by a debtor when he or she is insolvent or which renders him or her insolvent or by a defendant in an action

---

[3] Although Lumia did not appear to testify that the "Cat Skid Steer" has been re-leased to Lumia Leasing, he also testified that it was a vehicle "from Cat Financial." (Lumia Dep. Tr. B 62.) As such, Cat Financial may have an ownership interest in this vehicle, the significance of which is further addressed below.

10

for money damages who is unable to satisfy a judgment that the plaintiff finally obtains." *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at *3 (citation, footnote, and quotation marks omitted). "To prevail on a claim of fraudulent conveyance, a plaintiff must establish that the conveyance was made without fair consideration; that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and that the defendant has failed to satisfy the judgment." *Multibank*, 2017 WL 6028535, at *6 (alterations and quotation marks omitted) (quoting *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006)). Further, "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him[] is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant . . . ." *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609, 2015 WL 269529, at *2 (E.D.N.Y. Jan. 21, 2015) (emphasis omitted) (quoting N.Y. Debt. & Cred. Law § 273-a).

Here, it is undisputed that the Judgment remains unsatisfied. (*See* Dkt. No. 42; Kornfeld Aff. ¶¶ 3–4; Lumia Dep. Tr. A 11 (testifying that Defendant has not yet paid the Judgment).) Further, although it is unclear from the record exactly when the re-leasing from Defendant to Lumia Leasing took place, Plaintiffs have presented undisputed evidence that, at least with respect to the Semi-Trailers and 2005 Peterbilt, these vehicles remained in Defendant's name after September 16, 2019, when the Judgment was issued. (*See* Dkt. No. 42.) For example, Plaintiff submitted "plate returns" from the New York State Department of Motor Vehicles that include the VINs for the Semi-Trailers and 2005 Peterbilt. (*See* Subpoena Responses 43–44.) These documents appear to relate to registration suspensions and insurance lapses on the three vehicles, and list CRL Transportation, Inc., not Lumia Leasing, on the form. (*Id.*) Further, the

11

documents are dated October 28, 2019 and December 17, 2019, both of which were after issuance of the Judgment. (*Id.*) The information on these documents has not been disputed by Defendant. (*See generally* Def.'s Mem.) Thus, Defendant appears to have been in possession of the Semi-Trailers and 2005 Peterbilt for at least some time after the Judgment was issued. *See Multibank*, 2017 WL 6028535, at *7 (finding that when the alleged fraudulent conveyances were made, both parties were defendants in an action in which one had defaulted, and the default judgment remained unsatisfied); *State Farm Mut. Auto. Ins. Co.*, 2015 WL 269529, at *2–3 (noting that certain transfers deemed to be fraudulent conveyances were made while the action was pending).

However, in order to be deemed fraudulent conveyances, the re-leasing of the Semi-Trailers and 2005 Peterbilt must have been made without fair consideration. "[W]hether fair consideration was paid [is] generally [a] question[] of fact which must be determined under the circumstances of the particular case." *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at *3 (quotation marks omitted) (quoting *Joslin v. Lopez*, 765 N.Y.S.2d 895, 897 (App. Div. 2003)). "To be deemed 'fair consideration' . . . the recipient of the debtor's property must either convey property or discharge an antecedent debt in exchange; the exchange must be for a fair equivalent; and the exchange must be in good faith." *Neshewat*, 365 F. Supp. 2d at 519 (citation, alterations, and some quotation marks omitted). Plaintiffs argue in their Reply that based on Lumia's testimony, the transfers in question were made without consideration. (Pls.' Reply Mem. 7.) However, the Court finds that Lumia's testimony does not conclusively establish this fact. For example, while Lumia stated that he "resumed business under Lumia Leasing . . . for insurance purposes, and [because] E-Z Pass had suspended [his] registrations under [Defendant's name] for nonpayment," and that he "re-leased equipment under Lumia Leasing," (Lumia Dep. Tr. B 79,

12

84), Lumia did not answer any specific questions about consideration provided for the re-leasing, (*see generally* Lumia Dep. Tr. A; Lumia Dep. Tr. B). He also testified that there have not been any transfers or loans of money or work from Defendant to Lumia Leasing or vice versa, and that money "did[ not] go from one account to the other," because "at the end of the month, [Lumia] was always negative. So there was no money to transfer." (*Id.* at 84–86.) While these statements certainly establish that the two companies did not generally lend or provide money to one another and that, at least for Lumia and/or Defendant, there was likely no money to share in the first place, Lumia's testimony does not specifically relate to whether Lumia Leasing provided consideration for the motor vehicles to Defendant or Jim Reed, who still owns title to the vehicles. (*Id.* at 84.) In cases where conveyances were deemed to have occurred without consideration, the record has conclusively demonstrated that fact. *See Multibank*, 2017 WL 6028535, at *7 (noting that the assignment agreement between two parties "expressly state[d] that the transfer of assets . . . was made without fair consideration"); *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at *4 (indicating that fair consideration was not paid for a land transfer because the deed specified that the consideration was ten dollars, "a disproportionately small sum for the sale" (citation and quotation marks omitted)). Therefore, while it appears possible that consideration was not paid for the transfer, the Court finds that Plaintiffs have not conclusively established this fact.[4]

---

[4] The Parties should note that "badges of fraud" may help substantiate a claim of fraudulent conveyance, such as "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." *Wall Street Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 247–48 (App. Div. 1999) (citation and quotation marks omitted); *see also Multibank*, 2017 WL 6028535, at *7 (finding that additional "badges of fraud" existed when a transfer occurred at a time when the transferor was "under financial distress," the transferee knew that the transferor would be unable to satisfy a potential judgment, and the

13

Moreover, with respect to the 2010 Peterbilt, it is disputed whether this vehicle was originally in Defendant's possession, or whether Lumia Leasing obtained it directly from Jim Reed. Included with the Subpoena Responses is a 2018 Depreciation and Amortization Report (the "Depreciation Report"), which lists the acquisition dates, but not the VINs, for two trailers, a "2005 Peterbilt 379 tractor," a "2007 Peterbilt 379 dump truck," and a "2010 Peterbilt 389 triaxle dump truck." (Subpoena Responses 17.) These vehicles are labeled with numbers 21 through 25. (*Id.*) Based on Lumia's testimony, it appears that the two trailers, the 2005 Peterbilt 379 tractor, and the 2010 Peterbilt 389 triaxle dump truck were at one point in Defendant's possession. (Lumia Dep. Tr. A 43 (confirming that numbers 21 through 24 on a list of 2018 depreciations were still operable and with "the company"); Lumia Dep. Tr. B 84 (stating that the two trucks and trailers were re-leased to Lumia Leasing).) The Court therefore presumes that these four vehicles are the Semi-Trailers and Trucks at issue here. Thus, according to Depreciation Report, the 2010 Peterbilt appears to have been acquired by Defendant on March 23, 2018, approximately three weeks after Plaintiffs filed their Complaint. (Subpoena Responses 17.) However, despite this Report and Lumia's testimony that the 2010 Peterbilt was initially leased by Defendant, (Lumia Dep. Tr. B 42), Defendant contends that the 2010 Peterbilt was directly leased to Lumia Leasing from Jim Reed, (Def.'s Mem. 5, 6–7). In support of this statement, Defendant provides only the first page of a lease agreement between Lumia Leasing and Jim Reed, dated April 19, 2019. (Arrospide Decl. Ex. A ("Apr. 19, 2019 Lease") (Dkt. No. 60-1); *see also* Arrospide Decl. ¶ 2 ("As this Court can see, the vehicle is not owned or leased by [Defendant] and is outside of the scope of this proceeding.").) It is unclear to the Court how this

transferee and transferor "shared a close business relationship" (quotation marks omitted)). At least some of these factors are likely present here, which may ultimately substantiate Plaintiffs' claim of fraudulent conveyances.

14

incomplete document is sufficient to rebut Lumia's deposition testimony and the additional evidence offered by Plaintiffs that this truck was, at least at one point in time, leased by Defendant. And, to the extent that the document submitted by Defendant demonstrates a "re-lease" to Lumia Leasing, that re-lease appears to have taken place after the Court issued the Judgment, which may be relevant as to whether a fraudulent conveyance occurred. (*See* Apr. 19, 2019 Lease.) However, given these inconsistences, the Court cannot determine from the current record that there are "no genuine issues of material fact," *Neshewat*, 365 F. Supp. 2d at 525, with respect to the ownership and transfer of the 2010 Peterbilt, and thus cannot determine whether a fraudulent conveyance took place.

Even if the Court were to find that the re-leases in question were fraudulent conveyances, it is not clear that Plaintiffs have properly provided notice to all relevant parties under CPLR § 5225(b). Although Plaintiffs need not file a "special proceeding" to seek a turn over order under this section of the statute, it appears that Lumia Leasing, the purported transferee, has not been served with Plaintiff's Motion and provided with an opportunity to respond. Plaintiffs instead contend that "there is no suggestion that . . . [Defendant's] 'alter ego' w[as] unaware of the contents of the [M]otion." (Pls.' Reply Mem. 3.) However, § 5225(b) appears to contemplate that a non-party transferee receive notice of a special proceeding or motion, as it instructs that "special proceeding[s] [may be] commenced by the judgment creditor[] . . . *against a person who is a transferee* of money or other personal property from the judgment debtor," and notes that the judgment debtor should "also" receive notice of the proceeding. N.Y. C.P.L.R. § 5225(b) (emphasis added); *see also Bernard v. Lombardo*, No. 16-CV-863, 2016 WL 7377240, at *5 (S.D.N.Y. Nov. 23, 2016) (explaining that courts "entertain[ing] post-judgment fraudulent conveyance-based claims initiated as turnover motions . . . may issue an order to show cause *to*

15

*the nonparty transferees* . . . and schedule[] a hearing on the turnover application" (emphasis added) (citation, alterations, and quotation marks omitted)). Here, Plaintiffs have not sought an order to show cause against Lumia Leasing in conjunction with the Motion, and do not appear to have otherwise provided Lumia Leasing with the Motion. *See LaBarbera v. Audax Constr. Corp.*, 971 F. Supp. 2d 273, 282 (E.D.N.Y. 2013) (concluding that transferees of an alleged fraudulent conveyance were improperly served when they were not provided with the motion for a turn over order "in the same manner as a summons in an action" (citations and quotation marks omitted)); *Lyons Prof'l Servs.*, 727 F. Supp. 2d at 122 (noting that the plaintiffs filed a motion under CPLR § 5225(b) against the alleged fraudulent transferees and successor-in-interest, thus providing those parties with the opportunity to respond). (*See also* Order (noting that there was "no evidence" that the petition for a turn over order against a non-party was served on the alleged transferee of a fraudulent conveyance) (Dkt. No. 20, *Korea Trade Ins. Co. v. NEEMA Clothing, Ltd.*, Case No. 11-CV-8980).)

Additionally, to the extent that Plaintiffs argue that Lumia Leasing is an alter ego of Defendant, and thus should be liable for the Judgment apart from the reversal of fraudulent conveyances, (Pls.' Reply Mem. 4–5), Plaintiffs must "give notice to any entities against whom [P]laintiffs' judgment might be enforceable." *Bernard*, 2016 WL 7377240, at *6 (citation and quotation marks omitted) (dismissing without prejudice a motion for a turn over order when the plaintiffs failed to serve copies of their motion on the alleged alter egos); *cf. Advanced Video Techs. LLC v. HTC Corp.*, No. 11-CV-6604, 2019 WL 4198769, at *11 (S.D.N.Y. Aug. 12, 2019) (noting that the defendant properly served the plaintiff's principals in seeking a turn over order that would hold the principals jointly and severally liable); *First Horizon Bank v. Moriarty-Gentile*, No. 10-CV-289, 2015 WL 8490982, at *1 (E.D.N.Y. Dec. 10, 2015) (indicating that the

16

plaintiff filed an application for an order to show cause for an alleged alter ego third-party to

show cause why a turn over order should not be entered): *Lyons Prof'l Servs.*, 727 F. Supp. 2d at

122 (noting that the plaintiff filed its motion against an alleged successor-in-interest to one of the

defendants).[5]

_____

[5] Plaintiffs should also note that to the extent they seek an order from the Court
determining that Lumia Leasing is an alter ego of Defendant, and that Lumia Leasing should
therefore satisfy the Judgment (as opposed to an order reversing an alleged fraudulent
conveyance), Plaintiffs may also need to establish a separate basis for jurisdiction over Lumia
Leasing. *See First Horizon Bank*, 2015 WL 8490982, at *4 ("Because the instant dispute
concerns a claim of alter ego liability and not one of fraudulent conveyance, the court may not
simply exercise ancillary enforcement jurisdiction over [the alleged alter ego] and must make a
separate determination of whether it has jurisdiction over the [alleged alter ego] . . . ." (footnote
omitted)); *AF Holdings, LLC v. Olivas*, No. 12-CV-1401, 2014 WL 4782816, at *7 (D. Conn.
Sept. 24, 2014) (declining to consider whether certain non-parties were alter egos of the
defendant in a default judgment action when the defendant's brief "did not address the [c]ourt's
subject matter jurisdiction over non-parties"); *see also De Ping Song v. Inhae Corp.*, 578 F.
App'x 22, 23 (2d Cir. 2014) ("Where a new substantive theory . . . is advanced to establish
liability as to a new party, some independent ground is necessary to assume federal jurisdiction
over the claim." (citation omitted)). Further, under New York law, to pierce the corporate veil
on the theory that one entity is the alter ego of another is a "heavy burden," which requires a
party to prove that "(1) the defendant owners exercised complete domination of the corporation
[with] respect to the transaction attacked; and (2) that such domination was used to commit a
fraud or wrong against the plaintiff which resulted in [the] plaintiff['s] injury." *CSX Transp.,
Inc. v. Filco Carting Corp.*, No. 10-CV-1055, 2011 WL 2713487, at *3 (E.D.N.Y. July 11, 2011)
(citations, alteration, and quotation marks omitted). Plaintiffs argue that traditional rules for
piercing the corporate veil do not apply in ERISA actions; however, the cases from within the
Second Circuit that Plaintiffs cite do not involve post-judgment proceedings. (Pls.' Mem. 4–5.)
Instead, these cases involve pre-judgment determinations of alter ego liability, when the alleged
alter egos were defendants in the actions. *See Leddy v. Standard Drywall, Inc.*, 875 F.2d 383,
387 (2d Cir. 1989) (noting that the district court held a defendant jointly and severally liable for a
judgment as an alter ego); *Bourgal v. Robco Contracting Enters., Ltd.*, 969 F. Supp. 854, 863
(S.D.N.Y. 1997) (determining, on a motion for summary judgment, that there was sufficient
evidence establishing that the corporate defendants were alter egos), *aff'd*, 182 F.3d 898 (2d Cir.
1999); *Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 737–38 (S.D.N.Y. 1993) (finding, on a
motion for preliminary injunction, that the plaintiff alleged facts that created "serious questions
going to the merits of . . . the alter ego question"). Therefore, Plaintiffs should further explain
the applicability of this standard to post-judgment proceedings under Federal Rule of Civil
Procedure 69 and motions for turn over orders under CPLR § 5225.

However, to the extent Plaintiffs seek only to reverse alleged fraudulent conveyances to
Lumia Leasing, the Court has "ancillary jurisdiction over . . . effort[s] to reach assets found in
the hands of a third party, if those assets were fraudulently conveyed to the third party by the

Moreover, it appears that the vehicles Plaintiffs seek to obtain are leased from various

entities who may have ownership interests in them. (*See* Lumia Dep. Tr. B 62 (testifying that the

Skid Steer Loader is "from Cat Financial"), 84 (explaining that the lease agreements for the

Semi-Trailers and the Trucks are now in the name of Lumia Leasing, and that title to the vehicles

is "still owned by Jim Reed[]"); Subpoena Responses 3 (noting that the "[d]ebitor is [l]essee

only" with respect to the Semi-Trailers and 2005 Peterbilt), 5 (indicating that the installment

sales contract for the Skid Steer Loader was assigned to Caterpillar Financial Services

Corporation ("Caterpillar Financial")), 10 (stating that Caterpillar Financial has "first priority

security interest" in the Skid Steer Loader); Apr. 19, 2019 Lease (leasing the 2010 Peterbilt from

Jim Reed to Lumia Leasing).) Indeed, Lumia testified numerous times that the Semi-Trailers

and the Trucks are leased from Jim Reed, and that Lumia Leasing does not actually own any

equipment. (*See* Lumia Dep. Tr. B 82, 84.) Lumia also testified that the Cat Skid Steer was

either leased or obtained "from Cat Financial," (*id.* at 62–63), and according to an installment

sale contract submitted by Defendant, Caterpillar Financial maintains a "first priority security

interest" in the vehicle, (Subpoena Responses 10–13). Thus, the lessors of all five of the

vehicles at issue may be adverse claimants who should be offered an opportunity to be heard

_____

judgment debtor." *LaBarbera*, 971 F. Supp. 2d at 279 (alteration and quotation marks omitted)
(citing *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106, 107 (2d Cir. 2001)). Thus,
Defendant's argument that the Court has no jurisdiction over Lumia and Lumia Leasing would
likely not prevail, and Defendant has made only conclusory statements with respect to whether
the Court has personal jurisdiction over these non-parties. (*See* Def.'s Mem. 4 ("[T]he [C]ourt
must . . . have personal jurisdiction over the [P]arties. To the extent Plaintiffs[] . . . seek relief
for property in the possession or custody of . . . Lumia Leasing and/or . . . Lumia, the relief must
be denied because neither is the judgment debtor nor is there a basis for this Court . . . to exercise
jurisdiction over either insofar as issuance of a 'turn-over order' . . . ." (citations omitted)).)
Given that Lumia Leasing is a New York corporation, (Apr. 19, 2019 Lease), and Lumia's
primary residence is in New York State, (Lumia Dep. Tr. A 7), it is clear that the Court would
have personal jurisdiction over them. *See Advanced Video Techs.*, 2019 WL 4198769, at *11
(finding that the court had personal jurisdiction over alleged alter egos domiciled in New York).

before a turn over order is issued. Plaintiffs have not provided legal authority to the contrary.
*See* N.Y. C.P.L.R. § 5225(b) (allowing a court to "permit any adverse claimant to intervene in
the proceedings," such that a court "may determine [the claimant's] rights"). Nor have Plaintiffs
demonstrated that these entities have been served with the Motion, or asserted that these entities
do not need to be served. *See Cadle Co. v. Satrap*, 754 N.Y.S.2d 354, 381–82 (App. Div. 2003)
(reversing a lower court's grant of a turn over motion when one of the titleholders of the vehicle
at issue claimed that the court failed to determine her interest before turning over the vehicle);
*Erin Capital Mgmt.*, 854 N.Y.S.2d at 642–43 (determining that the title holder of a vehicle for
which the plaintiff sought a turn over order was "an aggrieved person [because] his property
rights in the vehicle would be substantially affected by a court's determination to turn over the
vehicle to the judgment creditor," and thus the title holder "must be given the opportunity to be
heard" (citations, alterations, and quotation marks omitted)); *Citibank (S.D.), N.A. v. Island Fed.
Credit Union*, 740 N.Y.S.2d 546, 547 (Sup. Ct. 2001) (noting that a turn over proceeding was
properly dismissed without prejudice when a joint account owner, whose "rights . . . w[ould] be
adversely affected by a judgment directing the turnover of funds in the joint accounts," was not
notified of the proceeding (citation omitted)); *cf. Levine as Tr. of Marvin H. Schein Descendants'
Tr. v. Brown*, No. 15-CV-1738, 2020 WL 550653, at *1 (S.D.N.Y. Feb. 4, 2020) (noting that the
third-party bank holding the funds at issue had been "consistently served and given the
opportunity to object to" turn over proceedings, and had not done so); *Miller v. City of Ithaca,
N.Y.*, No. 10-CV-597, 2019 WL 2502712, at *1–2 (N.D.N.Y. June 17, 2019) (finding that the
third-party trust company holding funds at issue had been property served with a turn over

19

motion).[6] Thus, the Court finds it proper that these entities have the opportunity to respond to

the Motion before it determines whether a turn over order should be issued.[7, 8]

### 3. Request for Preliminary Injunction

Plaintiffs seek a preliminary injunction to prevent Defendant from transferring or

conveying the five motor vehicles at issue. (Pls.' Mem. 4–5.) Defendant argues that Plaintiffs

---

[6] Counsel for Defendant argues that service of the Motion on Defendant was improper "because notice of the motion [was not] served on the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested," as required by CPLR § 5225. (Def.'s Mem. 4.) Instead, Plaintiffs mailed and e-mailed a copy of the Motion to Defendant's counsel, pursuant to Federal Rule of Civil Procedure 5(b)(1). (Pls.' Reply Mem. 2–3; Not. of Mot. Ex. A ("Certif. of Serv.") (Dkt. No. 55-1).) Defendant's argument with respect to service of the Motion on Defendant is unavailing. "Rule 69(a) adopts state procedures for execution only to the extent that they do not conflict with any applicable 'statute of the United States[,]' . . . [which] includes the Federal Rules of Civil Procedure . . . ." *Schneider v. Nat'l R.R. Passenger Corp.*, 72 F.3d 17, 19 (2d Cir. 1995) (citation omitted). Thus, "[a] motion for a turn[]over order is just that: a motion requesting relief from the court, which must be served on counsel for a represented party" under Rule 5, which "governs service of these motions. notwithstanding the statement in [CPLR §] 5225(a) requiring service 'personally in the same manner as a summons or by registered or certified mail.'" (*See* Order (Dkt. No. 62, *In re Vitamin C Antitrust Litig.*, Case No. 06-MD-1738 (E.D.N.Y.)).) As such. service of the Motion on counsel for Defendant was sufficient.

[7] Plaintiffs note that Judge Briccetti issued a turn over order for the Funds involving dump trucks owned by a different defendant, Pedro Construction, Inc., in *Picani v. Pedro Construction, Inc.*, No. 16-CV-7054. (Pls.' Reply Mem. 9.) However, in that action, the motion was unopposed, the trucks were owned, and not leased, by the defendant, and there were no conveyances at issue. (*See generally* Pls.' Mem. of Law in Supp. of Mot. for Turn Over Order; Aff. of Daniel Kornfeld, Esq. in Supp. of Mot. for a Turn Over Order Ex. A, at 15 (deposition testimony that two of the dump trucks at issue were owned by the defendant and not leased) (Dkt. Nos. 53–54, *Picano v. Pedro Constr., Inc.*, Case No. 16-CV-7054).)

[8] Given that additional parties must be served with the Motion, the Court does not address Defendant's argument that the motor vehicles are "tools of the trade," to which an exception may apply under New York State law. (Def.'s Mem. 5–7.) However, the Court does note that Defendant's sweeping statement that "[t]here can be no question that the very nature of any work undertaken by . . . [Defendant] and its owner requires trucks and trailers," (*id.* at 6), is conclusory and fails to set forth "*facts* which would show that . . . automobile[s] [are] not merely generally useful to [Defendant] but b[ear] such a special relationship to the work engaged in by [Defendant] as to, first of all, constitute it a tool of such work, and secondly, such a 'tool' as is 'necessary to the carrying on of . . . [Defendant's] profession or calling,'" *Thorpe Elec. Supply, Inc. v. Deitz*, 429 N.Y.S.2d 386, 387 (Cty. Ct. 1980).

20

have not made a "requisite showing" that there will be any "disappearing trucks," and that Plaintiffs' request is redundant, given that Plaintiffs have served numerous restraining notices. (Def.'s Mem. 7–8.)

The Court construes Plaintiffs' request as one under Federal Rule of Civil Procedure 65. (Pls.' Mem. 4 ("The Federal Rules of Civil Procedure further authorize the Court to enjoin a party to prevent activities that would frustrate collection of a judgment." (citations omitted).) However, to the extent that Plaintiff seeks a preliminary injunction "prohibiti[ng] . . . *Defendant* . . . [from] transferring or conveying the motor vehicles," or "directing Defendant . . . and . . . Lumia to . . . cease and desist from any action that would transfer or convey the motor vehicles required to satisfy the [J]udgment," (Pls.' Mem. 5–6), such an injunction appears to be moot with respect to the Semi-Trailers, 2005 Peterbilt, and 2010 Peterbilt, as the vehicles are no longer leased by Defendant. Instead, as discussed above, these vehicles have allegedly been re-leased to Lumia Leasing, and Jim Reed maintains title to them. (Lumia Dep. Tr. B 84.)

With respect to the Skid Steer Loader, which may still belong to Defendant, (*see id.* at 62), a preliminary injunction is not necessary because Plaintiffs have an "adequate remedy at law in the form of a [r]estraining [n]otice pursuant to Federal Rule of Civil Procedure 69 and . . . CPLR § 5222(b)," *Fischer Diamonds, Inc. v. Andrew Meyer Designs, L.L.C.*, No. 06-CV-2737, 2006 WL 1720431, at *1 (E.D.N.Y. June 21, 2006) (noting that the court had denied a motion for a temporary restraining order and preliminary injunction on this basis). "Under CPLR § 5222, an attorney for the judgment creditor may, as an officer of the court, serve a restraining notice on a third party who 'owes a debt to the judgment debtor or . . . is in the possession or the custody of property in which he or she knows or has reason to believe the judgment debtor . . . has an interest.'" *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470 (2d Cir.

21

2018) (alterations in original) (quoting N.Y. C.P.L.R. § 5222(a)–(b)). Any such notices issued by Plaintiff "serve[] as a type of injunction prohibiting the transfer of the judgment debtor's property" and "forbid[] [a recipient] [from] mak[ing] or suffer[ing] any sale, assignment[,] or transfer of, or any interference with, any such property in which the judgment debtor . . . is known or believed to have an interest." *Id.* at 471 (quotation marks omitted) (quoting *Aspen Indus., Inc. v. Marine Midland Bank*, 421 N.E.2d 808, 810 (N.Y. 1981); N.Y. C.P.L.R. § 5222(b)).

Indeed, while some courts have granted preliminary injunctions as a form of post-judgment relief, *see, e.g., Black v. Owen*, No. 14-CV-23, 2018 WL 1947134, at *1 (D. Conn. Feb. 28, 2018); *Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11-CV-1590, 11-CV-8726, 2014 WL 113702, at *1, *8 (S.D.N.Y. Jan. 13, 2014), others, including this Court, have called into question whether post-judgment relief under Rule 65 is appropriate when such relief is available under Rule 69, *see Allstar Mktg. Grp., LLC v. 158*, No. 18-CV-4101, 2019 WL 3936879, at *2 (S.D.N.Y. Aug. 20, 2019) ("[T]he language of Rule 69 is mandatory. If [the] [p]laintiff wishes to enforce its monetary judgment, it *must* do so in accordance with the procedures set forth by New York law, specifically [CPLR] Article 52." (emphasis in original) (citation omitted)); *Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959, 2016 WL 6102370, at *2 (S.D.N.Y. Oct. 18, 2016) ("[A] preliminary injunction under Rule 65 would be an inappropriate mechanism for seeking post[-]judgment relief, as the execution of judgments is governed by Rule 69." (citation omitted)), *appeal dismissed*, No. 16-3846, 2016 WL 10571825 (2d Cir. Nov. 30, 2016); *Tiffany (NJ) LLC v. Qi Andrew*, No. 10-CV-9471, 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) ("[T]he Court is unconvinced that a Rule 65 injunction is an appropriate vehicle for the post[-]judgment restraint. A plaintiff's ordinary recourse upon securing a money judgment is to

22

look to post[-]judgment remedies provided by [Federal Rule of Civil Procedure] 69 and state law."); *Motorola Credit Corp. v. Uzan*, 978 F. Supp. 2d 205, 214 (S.D.N.Y. 2013) ("[G]iven Rule 69's instruction that the procedures to be utilized by federal courts to execute upon a judgment must accord with the procedure of the state where the court is located, the [c]ourt is skeptical that [a Rule 65] injunction allows [a party] to skirt limitations on such relief under New York law through the use of a broad federal procedural mechanism." (citation and quotation marks omitted)); *see also Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966) ("It is hornbook law that the general purpose of a preliminary injunction is to preserve the status quo *pending final determination of the action.*" (emphasis added) (citation and quotation marks omitted)). Thus, because Plaintiffs are seeking post-judgment relief, for which remedies are available under Rule 69, and because Plaintiffs have served restraining notices under CPLR § 5222 on Defendant and other Parties, (*see* Def.'s Mem. 8; Pls.' Reply Mem. 8; Subpoena Responses 31 ("In light of the Restraining Notice concerning [Defendant], Atlantic [Salt] will delay payment of the invoice . . . .")), the Court finds that a preliminary injunction with respect to the Cat Skid Steer is not warranted.

### 4. Pending Motion To Compel

Plaintiffs have not provided the Court with an explicit update on the status of their pending Motion To Compel, (Dkt. Nos. 43–45), other than a series of letters asking the Court to delay its decision on the Motion given Plaintiffs' continued investigation into Defendant's assets. (*see* Nov. 15 Kornfeld Letter; Nov. 25 Kornfeld Letter; Dec. 16 Kornfeld Letter). Based on Plaintiffs' last Letter to the Court, the current Motion appears to supplant the earlier-filed Motion To Compel, as, after filing the Motion To Compel, Plaintiffs ultimately received some discovery responses and took the deposition of Lumia, and the Motion To Compel was filed when

Defendant had not yet responded to Plaintiffs' discovery requests at all. (*See* Jan. 6 Kornfeld Letter ("[D]espite . . . additional responses, [Plaintiffs] have still not received sufficient confirmation from Defendant . . . that the five motor vehicles . . . have either been repossessed or otherwise disposed of . . . without circumventing the judgment. . . . As a result [Plaintiffs] must now file a motion for a 'turn over' order . . . ."); Aff. of Daniel Kornfeld, Esq. in Supp. of Mot. To Compel ¶ 7 ("[Defendant] has not provided the documents and information to which Plaintiffs are entitled to enforce the judgment."); Aff'n of Karin Arrospide, Esq. in Opp'n to Pls.' Mot. To Compel ¶ 2 ("Defendant has now provided complete and unredacted copies of the documents requested by Plaintiffs . . . [and counsel for both Parties] have . . . agreed to schedule [Defendant's] deposition . . . .").) Thus, with the filing of this Motion, Plaintiffs do not appear to seek further discovery from Defendant, other than confirmation of whether the motor vehicles at issue are available to satisfy the Judgment, and the prior Motion To Compel appears to be moot. To the extent that Plaintiffs seek to compel additional discovery or attorneys' fees from Defendants, Plaintiffs should renew the Motion To Compel and clarify the additional discovery that they seek.

## III. Conclusion

For the foregoing reasons, the Court denies without prejudice Plaintiffs' Motion for a Turn Over Order and denies as moot Plaintiffs' Motion To Compel. If Plaintiffs wish to renew their Motion for a Turn Over Order, then within 30 days of the filing of this Order, Plaintiffs must file any supplemental briefing to address the deficiencies identified herein, and must serve copies of this supplemental briefing, their original Motion, and all supporting papers, along with a copy of this Order, on Lumia Leasing, Inc., Jim Reed's Truck Sales, and Caterpillar Financial, and on any attorney(s) whom Plaintiffs knows to represent these entities. *See Motorola Credit*

*Corp. v. Uzan*, 388 F.3d 39, 62 (2d Cir. 2004) (requiring the plaintiffs "to give notice to any

entities against whom [the] plaintiffs' judgment might be enforceable"). These entities shall

have 30 days to file any opposing memoranda of law and supporting documents, and Defendant

may have until the same date to file an opposition to any supplemental briefing filed by

Plaintiffs. Plaintiffs shall have 21 days to file any replies. The Clerk of Court is respectfully

directed to terminate the pending Motions. (*See* Dkt. Nos. 43, 55.)

SO ORDERED.

DATED:    July 2, 2020
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25